IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PAUL CHRISTENSEN,

    Plaintiff,

v.

FINANCIAL CREDIT SERVICE, INC.
d/b/a ARA, INC.
d/b/a ASSET RECOVERY ASSOCIATES,

    Defendant.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY**

1. Defendant is a debt collector who used false threats to force Plaintiff to pay thousands of dollars. Plaintiff brings claims for violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA") and the New Mexico Unfair Practices Act, N.M.S.A. 1978 §57-12-1 *et seq.* ("UPA").

**Jurisdiction**

2. This Court has jurisdiction under the FDCPA, 15 U.S.C. §1692k(d), and under 28 U.S.C. §§1331, 1337 and 1367.

**Parties**

3. Plaintiff Paul Christensen resides in Albuquerque, New Mexico. He is a "consumer" as defined by 15 U.S.C. §1692a(3). At all times relevant to this Complaint, he resided in New Mexico.

4. Defendant Financial Credit Service, Inc. ("FCS") is a foreign corporation whose principal business is the collection of consumer debts. It conducts business under the trade names ARA, ARA, Inc. and Asset Recovery Associates. FCS is not registered to do business in

New Mexico, and it does not have a license to operate as a debt collector as required by N.M.S.A. 1978 §61-18A-1 *et seq*. It regularly collects or attempts to collect debts owed or due or asserted to be owed or due another. FCS is a "debt collector" as defined by 15 U.S.C. § 1692a(6). The conduct described herein took place in the regular course of FCS's trade or commerce.

## Facts

5. Mr. Christensen is a 69-year-old man.

6. He lives alone in a rented apartment in Albuquerque, New Mexico.

7. He is barely able to meet his living expenses on a fixed income from Social Security and a very small pension.

8. Despite his straitened circumstances, he took pride in staying out of debt.

9. In May of 2014, after three years of saving, Mr. Christensen had set aside a few thousand dollars that he planned to use to have his damaged bottom teeth pulled and to buy dentures.

10. On or about May 8, 2014, a man acting on behalf of FCS called Mr. Christensen at his home telephone number.

11. The man asked for Mr. Christensen and provided Mr. Christensen's Social Security number and one of his prior addresses.

12. When Mr. Christensen confirmed his identity, the man placed him on hold.

13. A second man acting on behalf of FCS came on the line and became much more aggressive with Mr. Christensen.

14. The second man stated that Mr. Christensen needed to pay for a debt that he owed to Citibank.

15. The second man told Mr. Christensen that if he did not immediately pay $2,875.75, he would be sued for more than $7,000.00.

16. The second man told Mr. Christensen that if he did not immediately pay, he would have "people banging on his door."

17. The second man stated that FCS would obtain a judgment against Mr. Christensen if he did not immediately pay.

18. Mr. Christensen was shocked and frightened.

19. Mr. Christensen was uncertain whether he had ever owed money to Citibank. He thought that it was possible that he had incurred the debt earlier in his life, almost thirty years prior to the call.

20. The second man demanded Mr. Christensen's credit card number.

21. Mr. Christensen told the second man that he only had a debit card.

22. The second man took Mr. Christensen's debit card number and withdrew $2,875.75 from his bank account.

23. At no point in the phone call did the caller state his personal name or the name of FCS.

24. The threats that FCS used to take Mr. Christensen's money were false.

25. The debt that FCS claimed to be collecting was either completely bogus or was decades past the statute of limitations. FCS knew or should have known this.

26. At no point did FCS tell Mr. Christensen that the debt was time-barred.

27. The amount that FCS claimed that Mr. Christensen owed was false.

28. FCS had no intention of filing suit or obtaining a judgment against Mr. Christensen.

29. FCS misrepresented its authority to collect debts in the state of New Mexico.

30. A few days later, Mr. Christensen called FCS and asked for a receipt for the transaction.

31. FCS sent Mr. Christensen two letters which are attached as Exhibit A.  The letters repeated many of FCS's misrepresentations.

32. FCS did not send any letters to Mr. Christensen other than the letters shown in Exhibit A.

33. FCS had taken most of Mr. Christensen's savings.

34. As a result, he felt financially insecure, and he could not pay for the dental work that he needed.

35. Mr. Christensen worried that his bottom teeth might become infected.

36. Within a few months of FCS's call, one of Mr. Christensen's bottom teeth started to feel loose.

37. Because he could not afford the dental work, Mr. Christensen extracted the tooth himself with a pair of tweezers and some tape.

38. As of the filing of this lawsuit, Mr. Christensen has not saved enough to pay for his dental work.  He continues to be limited in his ability to eat, and to be concerned about his health as a result of his damaged teeth.

39. FCS's actions constitute the transaction of business within New Mexico and the commission of tortious acts within this state.

40. As a result of the actions of Defendant, Mr. Christensen suffered actual damages, including physical injuries, invasion of privacy, lost time, embarrassment, inconvenience, aggravation, humiliation, and emotional distress.

41. FCS has been sued many times for similar violations of the FDCPA and the UPA, and has been the subject of actions by multiple states' Attorneys General and other agencies seeking to prevent it from engaging in unlawful debt collection activities.

42. FCS's misconduct was willful, malicious, knowing and in conscious or reckless disregard of the rights of Plaintiff.

43. The actions of Defendant represent a pattern and practice of misconduct, and the imposition of punitive damages is appropriate in order to deter such actions in the future.

### First Claim for Relief: Violations of the FDCPA

44. The foregoing actions of Defendant violate the FDCPA, including 15 U.S.C. §§ 1692d, 1692e, and 1692f.

45. Plaintiff is entitled to recover statutory damages and actual damages, costs and reasonable attorney fees.

### Second Claim for Relief: Violations of the Unfair Practices Act

46. Defendant FCS is subject to the Unfair Practices Act for its business conduct in New Mexico.

47. The foregoing actions of Defendant FCS constitute unfair or deceptive trade practices and unconscionable trade practices, within the meaning of the New Mexico Unfair Practices Act, NMSA 1978 §57-12-2(D) and (E), and its regulations.

48. Defendant willfully engaged in these unlawful trade practices.

49. Plaintiff is entitled to recover actual or statutory damages, trebled, plus costs and reasonable attorney's fees.

50. Plaintiff is entitled to injunctive relief to prevent irreparable injury that will result from continued collection activities.

### Third Claim for Relief: Tortious Debt Collection

51. Defendant's actions constitute unreasonable and tortious debt collection practices which invaded Mr. Christensen's privacy, in violation of the doctrine enunciated by the New

Mexico Supreme Court in *Montgomery Ward v. Larragoite*, 81 N.M. 383, 467 P.2d 399 (1970).

52. Plaintiff is entitled to recover actual damages in an amount to be proven at trial, and punitive damages should also be awarded against Defendant.

### Fourth Claim for Relief: Fraud

53. FCS induced Mr. Christensen to pay it money by misrepresentation of material facts and by omission of material facts, as set forth above, including but not limited to, stating that Mr. Christensen owed the debt, that FCS was entitled to collect the debt, that the amount of the debt would increase if Mr. Christensen did not pay, that FCS intended to bring court action against Mr. Christensen, and that people would be "pounding on the door" if Mr. Christensen did not pay.

54. FCS knew such representations to be false, or it made those representations recklessly, or FCS had no reasonable grounds for believing those representations were true.  FCS also knew that its omissions were material and important.

55. FCS intended to deceive Mr. Christensen and intended that he would rely upon its representations, which he did, to his detriment, suffering damages.

### Jury Demand

56. Plaintiff hereby demands trial by a six-person jury on all issues so triable.

WHEREFORE, Plaintiff prays that this Honorable Court:

A.  Award statutory and actual damages for violations of the Fair Debt Collection Practices Act;

B.  Award statutory or actual damages, trebled, for violations of the Unfair Practices Act;

C.  Award actual and punitive damages for tortious debt collection;

D.  Award actual and punitive damages for fraud;

E.  Award reasonable attorney's fees;

F.  Award costs; and

G.  Grant such other relief as it deems just and proper.


Respectfully submitted,

*/s/Nicholas Mattison*
Nicholas Mattison
Feferman & Warren, Attorneys for Plaintiff
300 Central Ave., SW, Suite 2000 West
Albuquerque, NM 87102
(505) 243-7773
(505) 243-6663 (fax)