IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAUL CHRISTENSEN,

       Plaintiff,

vs.                                                                        Civ. No. 15-134 KG/LF

FINANCIAL CREDIT SERVICE, INC.,
d/b/a ARA, INC., d/b/a ASSET
RECOVERY ASSOCIATES,

       Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court upon Defendant's Motion to Vacate Default

Judgment on Liability (DKT. #18) (Motion to Vacate Default Judgment), filed on May 23, 2016.

(Doc. 55).  Plaintiff filed a response on June 6, 2016, and Defendant filed a reply on June 23,

2016.  (Docs. 59 and 62).  Having reviewed the Motion to Vacate Default Judgment and the

accompanying briefing, the Court grants the Motion to Vacate Default Judgment, in part.

*A. Background*

    *1. The Complaint*

Plaintiff alleges that on May 8, 2014, he received a telephone call at his home during

which a man acting on behalf of Defendant stated that Plaintiff owed a debt to Citibank and had

to pay Defendant $2,875.75.  (Doc. 1) at ¶¶ 10, 14-15.  The man told Plaintiff that if he did not

pay $2,875.75 "he would be sued for more than $7,000.00."  *Id.* at ¶ 15.  That man also told

Plaintiff that if he did not immediately pay the debt people would be "banging on his door" and

Defendant would obtain a judgment against him.  *Id.* at ¶¶ 16 and 17.  Plaintiff contends that the

man provided Plaintiff with his Social Security number and one of his prior addresses.  *Id.* at ¶

11.  Plaintiff further contends that the man was "aggressive" and that the call "shocked and frightened" him.  *Id.* at ¶¶ 13 and 18.  The man on the telephone obtained Plaintiff's debit card number from Plaintiff and withdrew $2,875.75 from Plaintiff's bank account.  *Id.* at ¶ 22.  Plaintiff notes that at no point during the telephone conversation did the man state his name or Defendant's name.  *Id.* at ¶ 23.

Plaintiff alleges that he "was uncertain whether he had ever owed money to Citibank" and "that is was possible that he had incurred the debt earlier in his life, almost thirty years prior to the call."  *Id.* at ¶ 19.  Nonetheless, Plaintiff alleges that this debt was either "bogus" or "decades past the statute of limitations."  *Id.* at ¶ 25.  Consequently, Plaintiff contends that he did not owe this debt.

A few days after the telephone call to Plaintiff, Plaintiff called Defendant to ask for a receipt for the transaction.  *Id.* at ¶ 30.  Defendant mailed two letters to Plaintiff, dated May 15, 2014, indicating that Plaintiff's account was settled in full.  (Doc. 1-1).

Plaintiff brings his First Claim for Relief for violations of the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692d (harassment, oppression, and abuse), 1692e (false representation), and 1692f (unfair or unconscionable means).  Plaintiff's Second Claim for Relief is for violations of the New Mexico Unfair Practices Act (NMUPA), NMSA 1978, § 57-12-2(D) (unfair or deceptive trade practices) and (E) (unconscionable trade practices) (2015 Cum. Supp.).  Plaintiff's Third Claim for Relief is for tortious debt collection based on an invasion of Plaintiff's privacy.  Finally, Plaintiff's Fourth Claim for Relief is for fraud.

### 2.  *The Default Proceedings*

On April 20, 2015, the Clerk entered a default against Defendant.  (Doc. 8).  On January 7, 2016, the Court entered a Default Judgment on Liability and stated that a separate hearing on

damages would be set.  (Doc. 18).  The Court then referred the matter of a jury trial on damages

to the Magistrate Judge.  (Doc. 19).  Defendant, unrepresented by counsel due to alleged

financial hardship, was aware of the damages jury trial but did not retain counsel in order to

participate in the jury trial.[1]  *See* (Doc. 59-1).  Only after the Magistrate Judge held the jury trial

and the jury returned a verdict in favor of Plaintiff for $200,000.00 in actual damages, $1,000.00

in statutory damages, and $10 million in punitive damages, did Defendant obtain both local

counsel and Chicago counsel.  (Docs. 38, 45, 46, and 47).

      Considering the jury's determination, Defendant now moves to (1) vacate the Default

Judgment on Liability on the basis that Plaintiff's claims for relief are subject to dismissal for

failure to state a claim under Fed. R. Civ. P. 12(b)(6), and (2), therefore, dismiss this lawsuit.

Defendant acknowledges that a consequence of the entry of the default is that "it has admitted

the well-pleaded facts of plaintiff's complaint."  (Doc. 62) at 1.

## B.  Discussion

      As an initial matter, the Court notes that the Default Judgment on Liability is not a final

default judgment, because damages have yet to be finally determined.  Hence, the Default

Judgment on Liability is subject to the "good cause" standard articulated in Fed. R. Civ. P. 55(c)

for deciding whether to set aside an entry of default.  *See Dassault Systemes, SA v. Childress*,

663 F.3d 832, 840 (6th Cir. 2011) ("An order granting default judgment without any judgment

entry on the issue of damages is no more than an interlocutory order to which Rule 60(b) does

not yet apply," thus, "the more lenient Rule 55(c) standard governs…."); *Hinson v. Webster

Indus.*, 240 F.R.D. 687, 690-92 (M.D. Ala. 2007) (discussing *Anheuser Busch, Inc. v. Philpot*,

317 F.3d 1264 (11th Cir. 2003) and *Federal Deposit Insurance Corp. v. Francisco Investment*

---

[1] "A corporation, partnership or business entity other than a natural person must be represented by an attorney authorized to practice before this Court."  D.N.M. LR-Cv 83.7.

*Corp.*, 873 F.2d 474 (1st Cir. 1989), which both held that Rule 55(c) good cause standard applies to non-final default judgments). However, even if an entry of default is appropriate, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998)). In other words, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Id.* (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975)). Consequently, it would be improper for a Court to grant a motion for default judgment on claims subject to dismissal under Rule 12(b)(6). *Id.*

　　Plaintiff contends that the above law regarding sufficiency of the pleadings in deciding whether to enter a default judgment does not apply when a court is deciding whether to vacate a default judgment. In *Tripodi v. Welch*, a Tenth Circuit case, the district court denied the defaulting party's motion to set aside the default and default judgment, and denied his motion for judgment on the pleadings, a motion similar to a Rule 12(b)(6) motion to dismiss.[2] 810 F.3d 761, 764 (10th Cir. 2016). On appeal, the defaulting party "ostensibly" challenged the district court's denial of his motion for judgment on the pleadings, but the Tenth Circuit believed that the "unavoidable threshold question [was] the 'validity of the default judgment.'" *Id.* (citation omitted). The Tenth Circuit acknowledged that the defaulting party decided not to directly challenge the entry of the default judgment but to instead "mount[] a roundabout attack by questioning the sufficiency of the pleadings." *Id.* The Tenth Circuit affirmed the district court's

---

[2] "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

denial of the defaulting party's motion for a judgment on the pleadings.  In doing so, the Tenth Circuit implicitly determined that the default judgment was, in fact, not subject to being set aside, because the pleadings were sufficient.  The Court finds that *Tripodi*, along with *Bixler*, supports Defendant's contention that the Court should address the Motion to Vacate Default Judgment in the context of Rule 12(b)(6).

### 1. Rule 12(b)(6) Standard

In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff.  *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984).  Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief.  *Id*. at 570.  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

### 2. The FDCPA Claims

#### a. Covered Debt

Defendant argues first that the FDCPA claims fail because Plaintiff does not allege facts which show that the FDCPA covers the debt at issue.  A "covered" debt is a debt "primarily for personal, family, or household purposes."  15 U.S.C. § 1692a(5).  Plaintiff alleges in the

complaint that Defendant is a "debt collector" which collects "consumer debts," as defined by 15 U.S.C. § 1692a(6).  (Doc. 1) at ¶ 4.  Plaintiff also alleges in his complaint that he is a "consumer," as defined by 15 U.S.C. § 1692a(3).  *Id.* at ¶ 3.  Section 1692a(6) of the FDCPA states that a "debt collector" is any person who collects "debts owed or due or asserted to be owed or due another."  Section 1692a(3) states that a "consumer" is a "natural person obligated or allegedly obligated to pay any debt."

Plaintiff contends that since the definitions of "debt collector" and "consumer" incorporate "debt," as defined by the FDCPA, "debt collector" and "consumer" necessarily refer to "covered" debts under the FDCPA.  At least one district court agrees with this contention.  In *Kimmel v. Cavalry Portfolio Servs., LLC*, the district court held that

> when the FDCPA states that a debt collector is someone who engages in "the collection of any debts" and a consumer is a person obligated to "pay any debt," it is referring to "debt" as defined in the statute itself, i.e. one that is obtained for personal, family, or household purposes.  Any other interpretation would not make sense in the context of the FDCPA's plain language and purpose.

2011 WL 3204841, at *3 (E.D. Pa.).  The district court further found "that when Defendant admitted that it was a 'debt collector' and that Plaintiff was a 'consumer' for purposes of the FDCPA, it admitted that the debt at issue … fell within the meaning of the statute as well."  *Id.*  The Court finds the reasoning in *Kimmel* to be persuasive and will, thus, adopt that reasoning.

Similar to *Kimmel*, Defendant admits, through its default, that it was a "debt collector" and that Plaintiff was a "consumer."  *See United States v. Craighead*, 176 F. App'x 922, 924 (10th Cir. 2006) (by defaulting, defendant admits well-pled allegations of fact).  That being the case and applying the reasoning in *Kimmel*, the Court concludes that Plaintiff has plausibly alleged that the debt at issue is a "covered" debt under the FDCPA.

b. *Harassment, Oppression, and Abuse of Plaintiff*

Defendant also argues that Plaintiff failed to state a plausible claim under Section 1692d which prohibits "any conduct the natural consequences of which is to harass, oppress, or abuse any person." 15 U.S.C. § 1692d. Examples of harassment include a threat of violence to physically harm a person, use of "language the natural consequence of which is to abuse the hearer," and telephone calls which do not meaningfully disclose the caller's identity. *Id.* at § 1692d(1), (2), and (6).

Plaintiff alleges in his complaint that (1) the caller threatened to send "people banging on his door" if he did not immediately pay; (2) the caller spoke to Plaintiff in an "aggressive" manner which "shocked and frightened" Plaintiff; and (3) the caller neither stated his name or Defendant's name. (Doc. 1) at ¶¶ 13, 16, 18, and 23. Plaintiff further testified at the damages trial that the caller yelled and screamed at him, threatened to take everything Plaintiff has, and would "beat" down his door. (Doc. 52) at 68-69.

The Court does not equate a threat to have people bang on Plaintiff's door with a threat to physically harm Plaintiff as Plaintiff contends in his response. (Doc. 59) at 16. Moreover, Plaintiff's allegation and testimony of "aggressive" yelling and screaming, even if shocking and frightening to Plaintiff, does not provide a sufficient factual basis for this Court to reasonably infer that the language used by the caller would "as a natural consequence" be abusive to the hearer. *See Riding v. Cach LLC*, 992 F.Supp.2d 987, 995 (C.D. Cal. 2014) (allegation that caller yelled and "used abusive language" insufficient to state § 1692d(2) claim); *Higgs v. Diversifed Consultants, Inc.*, 2014 WL 1374055, at *2 (W.D. Mo.) (court does not use subjective standard in deciding whether § 1692d violated). In addition, a caller is not required to disclose his or her personal name under Section 1692d(6). *Torres v. ProCollect, Inc.*, 865 F. Supp. 2d 1103, 1105

7

(D. Colo. 2012) ("only way for an identity disclosure to be meaningful to a consumer is if it discloses the name of the debt collection company," not the caller's personal name).  Section 1692d(6), also, does not apply if the caller discloses a trade name as Defendant states occurred in this case.[3]  *Everage v. Nat'l Recovery Agency*, 2015 WL 1071757, at *4 (E.D. Pa.).  Finally, even if a meaningful disclosure of the caller's identity did occur, a single call is insufficient to violate Section 1692d(6).  *Hagler v. Credit World Servs., Inc.*, 2014 WL 4954595, at *4 (D. Kan.).  Plaintiff has, therefore, failed to state a plausible claim under Section 1692d for harassment, oppression, or abuse.

<em>c.  False Representations</em>

Defendant argues next that Plaintiff did not adequately plead a violation of Section 1692e for alleged false representations made by Defendant.  Section 1692e provides examples of false representations such as false representations of "the character, amount or legal status of any debt," threats to take actions that cannot legally be taken or are not intended to be taken, and false representations or deceptions to collect any debt.  15 U.S.C. § 1692e(2)(a), (5), and (10).

Plaintiff alleges in his complaint that (1) the caller threatened Plaintiff with a lawsuit for more than $7,000.00 if he did not pay $2,875.75; (2) the caller stated Defendant would obtain a judgment against Plaintiff if he did not immediately pay; (3) Defendant knew or should have known that the debt it was collecting was either "bogus" or decades past the statute of limitations; (4) Defendant knew that the amount that Plaintiff allegedly owed was false; and (5) Defendant had no intention of filing suit or obtaining a judgment against Plaintiff.  (Doc. 1) at ¶¶ 15-17, 24, 25, 27, and 28.  Plaintiff also alleges that he "was uncertain whether he had ever owed

---

[3] Defendant states that the caller identified it by its trade name ARA.  (Doc. 62) at 9.

money to Citibank" and "it was possible that he had incurred the debt earlier in his life, almost

thirty years prior to the call." (Doc. 1) at ¶ 19.

      Viewing these allegations as a whole, Plaintiff clearly alleges that he did not currently

owe money to Citibank.  From that factual basis, which Defendant admits through its default, the

Court can reasonably infer that Defendant falsely represented that Plaintiff currently owed a debt

to Citibank and that Defendant, therefore, unlawfully threatened a lawsuit and judgment against

Plaintiff which Defendant could not legally take.  Consequently, the Court can reasonably infer

from the allegations that Defendant made false representations to collect the debt.  For the above

reasons, Plaintiff has stated a plausible claim for a violation of Section 1692e

                  *d.  Unfair or Unconscionable Means*

      Lastly, Defendant argues that Plaintiff has not stated a plausible claim under Section

1692f.  Section 1692f prohibits a debt collector from using "unfair or unconscionable means to

collect" a debt.  15 U.S.C. § 1692f.  Plaintiff specifically cites Section 1692f(1) which states that

a Section 1692f  violation applies to "[t]he collection of any amount (including any interest, fee,

charge, or expense incidental to the principal obligation) unless such amount is expressly

authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  To

support this claim, Plaintiff alleges in his complaint that the caller provided Plaintiff with his

Social Security number and a prior address to convince Plaintiff that the call was legitimate, and

that the caller used Plaintiff's debit card number to withdraw $2,875.75 from his bank account.

(Doc. 1) at ¶¶ 11 and 22.  As Defendant argues convincingly, merely confirming a debtor's

identity through personal information does not constitute "unfair or unconscionable means."

Also, Plaintiff does not allege any facts to indicate that he did not consent to Defendant

withdrawing $2,875.75 from his bank account.  Finally, as Defendant notes, accepting payment

with a debit card over the phone is not a *per se* unconscionable practice.  Plaintiff has, therefore, not stated a plausible Section 1692f claim.

    *3. NMUPA*

    Defendant asserts that Plaintiff inadequately alleged that its business conduct "constitute[s] unfair or deceptive trade practices and unconscionable trade practices" under the NMUPA.  (Doc. 1) at ¶ 47.  Plaintiff notes that the Magistrate Judge instructed the jury only on the claim of unfair or deceptive trade practices.  (Doc. 36-1) at 5.  Plaintiff, therefore, focuses on that particular claim without conceding that the Court erred in granting default judgment on the unconscionable trade practices claim.  (Doc. 59) at 21.  However, under D.N.M. LR-Cv 7.1(b), Plaintiff's failure to respond to Defendant's assertion that the unconscionable trade practices claim is also subject to dismissal constitutes consent to vacate the default judgment as to that claim as well as to dismiss the claim.

    In order to state an unfair or deceptive trade practices claim under the NMUPA, the plaintiff must show:

> First, ... the party charged made an "oral or written statement, visual description or other representation that was either false or misleading." Second, the false or misleading representation must have been "knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or ... collection of debts." Third, the conduct complained of must have occurred in the regular course of the representer's trade or commerce.  Fourth, the representation must have been of the type that "may, tends to or does, deceive or mislead any person."

*Stevenson v. Louis Dreyfus Corp.,* 1991–NMSC–051, ¶ 13, 112 N.M. 97.  "The 'knowingly made' requirement is met if a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading."  *Id.* at ¶ 17.

Plaintiff asserts that "[f]or the same reasons set forth with regard to false, deceptive, or misleading representations under the FDCPA, it is clear that Plaintiff adequately alleged unfair or deceptive trade practices under the UPA." (Doc. 59) at 21. Defendant contends that the complaint does not contain any factual allegations that Defendant was aware or should have been aware that the representations were false and misleading. Plaintiff alleges, however, in the complaint that

      25. The debt that [Defendant] claimed to be collecting was either completely bogus or was decades past the statute of limitations. [Defendant] knew or should have known this.

This allegation sufficiently pleads that Defendant was actually aware that its statement to Plaintiff that he owed a debt to Citibank "was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *Stevenson*, 1991-NMSC-051, at ¶ 17. Plaintiff has, therefore, pled a plausible NMUPA claim for unfair or deceptive trade practices.

    *4. Tortious Debt Collection Claim*

Defendant further argues that Plaintiff did not allege a plausible tortious debt collection claim based on an invasion on Plaintiff's privacy. In New Mexico, a defendant's "improper conduct in knowingly and intentionally pursuing a person to force payment of a debt, whether or not he owes it, may, under certain circumstances, give rise to a right to damages for an invasion of privacy." *Montgomery Ward v. Larragoite*, 1970-NMSC-057, ¶ 6, 81 N.M. 383. Defendant maintains that a single call to Plaintiff does not amount to a tortious debt collection, citing *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1217 (10th Cir. 2007). In that case, the Tenth Circuit addressed the general tort of intrusion by quoting *Restatement (Second) of Torts* § 652B, cmt. d (1977): "[T]here is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the

telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded." *Alvarado*, however, does not address the specific claim of tortious debt collection as articulated by the New Mexico Supreme Court. On the other hand, *Obenauf v. Frontier Fin. Grp., Inc.*, a case from this district, provides support for a tortious debt collection claim based on a single telephone call. 785 F. Supp. 2d 1188 (D.N.M. 2011). In *Obenauf*, although the plaintiff had received three calls regarding debt collection from a third person, the court found tortious debt collection when the plaintiff received one call after having notified debt collector to cease calling. *Id.* at 1191, 1295. The Court concludes that Plaintiff has alleged sufficient facts to state a plausible tortious debt collection claim.

     *5. Fraud*

     Finally, Defendant claims that Plaintiff has not stated a plausible fraud claim. The New Mexico Supreme Court has defined fraud as "[a] misrepresentation of fact, known by the maker to be untrue, made with the intent to deceive the party to whom the representation was made and to induce that other party to act, is actionable fraud when the other party does act upon the misrepresentation to its detriment." *Otero v. Jordan Rest. Enterprises*, 1996-NMSC-047, ¶ 16, 122 N.M. 187. Moreover, "[t]he facts and circumstances surrounding a transaction may provide clear and convincing evidence of fraudulent intent." *Ledbetter v. Webb*, 1985-NMSC-112, ¶ 22, 103 N.M. 597. *See also State v. Griscom*, 1984-NMCA-059, ¶ 13, 101 N.M. 377 ("Intent is an essential element of fraud which may be established by inference from the evidence and surrounding circumstances."). In addition, Fed. R. Civ. P. 9(b) requires that "a party must state with particularity the circumstances constituting fraud," but knowledge and intent "may be alleged generally."

Although Plaintiff alleges that he "was uncertain whether he had ever owed money to Citibank," Plaintiff does sufficiently allege that he did not presently owe any money to Citibank. (Doc. 1) at ¶¶ 19, 25.  As noted previously, Plaintiff alleges that Defendant "knew or should have known" that the debt "was either completely bogus or was decades past the statute of limitations," but, nonetheless, represented to Plaintiff that he owed money on the debt.  The Court can reasonably infer from the complaint that Defendant intended to deceive Plaintiff in order to induce him to pay the money, which Plaintiff did to his detriment.  These factual allegations state a plausible claim for fraud.

### 6. *Conclusion*

The Court concludes that, except for the FDCPA Section 1693d and 1693f claims, and the NMUPA unconscionable trade practices claim, Plaintiff has stated plausible claims in his complaint which are not subject to dismissal under Rule 12(b)(6).  The Court will, therefore, grant the Motion to Vacate Default Judgment only as to the Section 1692d and 1692f claims, and the NMUPA unconscionable trade practices claim, which the Court will dismiss without prejudice.  Even excluding those claims, Plaintiff has, nevertheless, pled a plausible FDCPA claim under Section 1692e and a plausible NMUPA claim for unfair or deceptive trade practices.  Thus, the complaint provides a sufficient basis for a default judgment based on violations of the FDCPA and NMUPA as well as on the other remaining claims for relief.

IT IS ORDERED that

1. Defendant's Motion to Vacate Default Judgment on Liability (DKT. #18) (Doc. 55) is granted only as to the FDCPA Section 1693d and 1693f claims, and the NMUPA unconscionable trade practices claim; and

2.  those claims will be dismissed without prejudice.

UNITED STATES DISTRICT JUDGE